Commonwealth *v.* Szulczewski, Appellant.

Argued March 26, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Harry F. Swanger,* for appellant.

*Ronald L. Buckwalter,* First Assistant District Attorney, with him *D. Richard Eckman,* District Attorney, for Commonwealth, appellee.

OPINION BY PRICE, J., March 31, 1975:

This appellant was indicted and convicted after a jury trial on charges of robbery, assault with intent to kill, aggravated assault and battery on a police officer, pointing a deadly weapon and violation of the Uniform Firearms Act. He was sentenced to imprisonment for a total term of 16 to 32 years. These charges arose from what was described by the lower court as "a bizarre chain of events" on the Pennsylvania Turnpike near Lancaster, Pennsylvania. On June 14, 1964, a vehicle in which appellant was a passenger accompanied by two accomplices was stopped by a Pennsylvania State Trooper for speeding. As this trooper was checking the vehicle, appellant drew a .38 nickel-plated revolver, held up the trooper and aided by his two accomplices took the trooper's gun and handcuffs. After removing the trooper some distance from the roadway, these three men handcuffed the trooper to a nearby tree. A second State Trooper, who happened upon the scene and stopped to check the first empty State Police cruiser, was subjected to the same treatment. A third State Trooper, who was investigating the long silence from the first two troopers, came to the scene and was also held up by the appellant and his accomplices. However, before he could be handcuffed, removed from the roadway and handcuffed to the tree, a fourth State Trooper arrived. Numerous shots were exchanged between the fourth State Trooper and the appellant, and in the course of this exchange of shots, the third State Trooper was wounded twice in the leg and the fourth State Trooper was shot in the face—the bullet entering near his nose, passing through his neck and exiting through his chest.

After a massive manhunt, the appellant and his accomplices were apprehended. Both troopers subsequently recovered from their injuries. As would be expected, this incident received a great deal of publicity in all of the news media, particularly in the Lancaster County area, but to a lesser extent all over the Commonwealth of Pennsylvania.

Appellant and his accomplices were given a preliminary hearing on June 30, 1964, and were held for court on all charges. On July 24, 1964, this appellant filed a Petition for Change of Venue and also a Petition for Severance, both of which were denied by the lower court on August 25, 1964. On September 29, 1964, appellant was committed to Farview State Hospital following a sanity commission report and hearing.

Appellant's trial was commenced with the jury on September 20, 1965—well over a year from the date of the occurrences relating to his arrest and almost a full year from the date of his commitment to Farview State Hospital. His accomplices had pled guilty and were sentenced on September 21, 1964—one year less a day prior to this trial.

No post-trial motions were filed. However, his conviction has been followed by numerous proceedings in the state and federal courts which we need not detail here but which culminated in an Order entered by the Supreme Court of Pennsylvania on September 24, 1973, directing this court to permit an allowance of appeal nunc pro tunc. This direct appeal is now before us as a result of that Order.

Appellant makes numerous contentions. However, all but two of them are clearly waived since they were not raised in the lower court and are controlled by the Pennsylvania Supreme Court's decision in *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).

Of the two remaining contentions, one is the alleged error of the lower court in denying appellant's request for

a change of venue. This, too, may well have been waived under the doctrine of the *Clair* case. However, since the record is unclear as to whether or not the appellant raised this in the lower court, we will consider this contention on its merits.

Obviously, a case involving a shoot-out on the Pennsylvania Turnpike in which two State Troopers were robbed and captured, and two State Troopers were wounded would be subject to extensive publicity. There is attached to the appellant's Brief 35 pages of newspaper articles and pictures directly concerning the incident and this appellant. In addition, the lower court noted in its opinion denying the change of venue that "front page newspaper publicity followed, in which the alleged participants were described as thugs and desperadoes and photographs appeared of the trio and the wounded troopers." We wish to re-emphasize, however, that this appellant was tried well over a year from the date of the occurrences leading to his arrest and that the bulk of the coverage given to this incident and this appellant by the news media was given in the period from June 14, 1964, through September 29, 1964. Indeed, of the 35 pages of publicity available to us in this record, 29 of those pages appeared prior to September 29, 1964, and only 3 of the remaining stories in the record were printed immediately prior to and during his trial. Motions for Change of Venue were most recently discussed by the Pennsylvania Supreme Court in *Commonwealth v. Powell*, 459 Pa. 253, 328 A.2d 507 (1974) wherein it was held that disposition of motions for a Change of Venue are within the sound discretion of the trial court, and that an appellate court in determining whether or not this discretion has been abused may make only legitimate inquiry in the area as to whether a juror had formed a fixed opinion as to the accused's guilt or innocence. The mere fact of extensive pre-trial publicity does not necessarily preclude a fair trial in that county if the court is satisfied that an objec-

tive, open-minded jury can be selected from among the members of a community exposed to the publicity.

The trial court was obviously satisfied that a fair trial could be given appellant. Unfortunately, the voir dire in this case was not transcribed. Therefore, we do not have available the trial record of the occurrences during the voir dire of appellant's jury. We must, therefore, examine those portions of the record available to us to determine whether or not we can picture what transpired on this voir dire. *Commonwealth v. Anderson*, 441 Pa. 483, 272 A.2d 877 (1971) ; *Commonwealth v. DeSimone*, 447 Pa. 380, 290 A.2d 93 (1972). There was not in 1964 nor is there now a requirement that the voir dire in non-capital cases be transcribed. See Pa.R.Crim.P. 1107.

The only information, other than the lower court's Order denying the Motion for Change of Venue which was entered August 25, 1964, is the copy of the appellant's proposed voir dire questions with defense counsel's notations as to those questions allowed and those disallowed. This document reveals that the following questions were used on voir dire: "1. Do you now entertain any prejudice against the Defendant due to the nature of the charge? 4. Have you discussed the case with anyone who purports to know the facts and circumstances of this charge? 5. Have you read or heard about this case? 7. Have you formed or expressed any opinion as to the guilt or innocence of the Defendant from what you read in the newspapers? 8. Would it require evidence to remove or change your opinion?" From a reading of these questions which were allowed, it appears obvious that voir dire was conducted in conformity with the accepted standards of this Commonwealth, and that the scope of the voir dire insured the selection of an open-minded jury from among the members of the Lancaster County community which had been exposed to the publicity. Further, as we have previously noted, the vast bulk of this publicity occurred well over a year prior to the trial of the appellant. In

addition, the record and the transcript are entirely devoid of the slightest suggestion that defendant, at any time, objected to the exclusion of any of his proposed voir dire or to any of the other matters involved in the selection of this jury. We conclude, therefore, that the lower court properly denied the Motion for a Change of Venue and properly insured the appellant of a trial by an objective, fair and open-minded jury.

The second contention to be considered on this appeal is that the lower court denied appellant due process of law by failing to recognize that the charge of aggravated assault and battery on a police officer merged into the greater offense of assault with intent to kill. Appellant's argument fails to recognize that appellant was convicted in an incident involving the shooting of two policemen and that the jury properly could, and did, convict him of assault with intent to kill the State Trooper shot in the face and of aggravated assault and battery upon a police officer of the State Trooper shot twice in the leg. From the evidence presented by the Commonwealth, this is an entirely logical and proper conclusion.

We have previously held in *Commonwealth v. Lockhart,* 223 Pa. Superior Ct. 60, 63, 296 A.2d 883, 884-85 (1972) : "Therefore, if five individuals are robbed in a room at gunpoint, five separate robberies have occurred since each victim was placed in apprehension by the acts of the assailant. We have previously held that where separate crimes are committed against different individuals, a defendant is not placed in double jeopardy by being tried for each crime, even though the crimes took place at the same place and approximately the same time. *Commonwealth ex rel. Spencer v. Banmiller,* 186 Pa. Superior Ct. 99, 140 A.2d 860 (1958) ; *Commonwealth ex rel. Kitzinger v. Claudy,* 173 Pa. Superior Ct. 453, 98 A.2d 457 (1953)." See also *Commonwealth v. Marker,* 231 Pa. Superior Ct. 471, 331 A.2d 883 (1974).

We see no reason to disturb this finding, nor do we find error in the sentence imposed. It may well be that appellant would now like to assign as error the failure of the lower court to cover more fully the separation of the nature of the charges as to these State Troopers in its charge. However, there was not a single exception taken or request made to the lower court upon the completion of its charge, and such a situation is clearly covered by *Commonwealth v. Clair, supra.*

Judgment of sentence affirmed.

HOFFMAN and SPAETH, JJ., concur in the result.