Commonwealth *v.* Marker, Appellant.

472

Submitted September 17, 1974.   Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Louis Lipschitz,* for appellant.

*Carolyn Engel Temin, Mark Sendrow,* and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY PRICE, J., December 11, 1974:

This appeal follows lower court convictions for conspiracy and for blackmail.   Appellant was sentenced to 1 year to 2 years imprisonment on the conspiracy conviction and to terms of 1½ years to 3 years on each of four blackmail convictions. The blackmail convictions

were to run consecutively but the conspiracy conviction was to run concurrently with the first blackmail term of sentence. Appellant here raises several arguments in support of his motions for arrest of judgment or, in the alternative, for a new trial. We have examined these arguments and find them to be without merit and, therefore, affirm the judgments of sentence of the lower court.

A brief summary of the evidence reveals an elaborate scheme to extort money from several college students who came to Philadelphia to purchase narcotics. The amount involved was quite large, valued at approximately $30,000. In actuality, the contraband was nothing more than henna, an innocuous substance, doctored with honey to give the appearance of hashish. The plan was to set up the sale between Norman Felt, one of the conspirators, and the unsuspecting buyers in a Philadelphia apartment. While the sale was taking place, appellant, a Philadelphia police lieutenant, and the other conspirators were to raid the apartment, ostensibly place everyone under arrest, and confiscate the counterfeit hash. After everyone had been sufficiently impressed with the authenticity of the raid, Paul Rubin, another conspirator and the Commonwealth's chief witness, on cue, was to suggest a deal. The student-buyers would exchange their money for their freedom.

The episode went off like clockwork. The duped student-buyers were released one at a time, and Norman Felt was taken to the police station, where he was released due to lack of evidence. A short time later, several of the blackmailed persons became suspicious of the whole affair. These people eventually recounted their experience to the District Attorney and the trial below followed.

Appellant's first argument is that the trial judge erred in imposing consecutive sentences on the four Bills of Indictment charging blackmail. There is no

question that the trial judge may, at his discretion, impose consecutive sentences for multiple convictions.[1] However, appellant contends that only one crime was committed even though several people were blackmailed. To support this position, appellant cites several cases in his brief.[2] We have examined these cases and find that they are not controlling.

We are instead guided by the decision in *Commonwealth v. Lockhart,* 223 Pa. Superior Ct. 60, 296 A.2d 883 (1972). The court in *Lockhart* stated: "Therefore, if five individuals are robbed in a room at gunpoint, five separate robberies have occurred since each victim was placed in apprehension by the acts of the assailant. We have previously held that where separate crimes are committed against different individuals, a defendant is not placed in double jeopardy by being tried for each crime, even though the crimes took place at the same place and approximately the same time." 223 Pa. Superior Ct. at 63, 296 A.2d at 884-885. Although the pertinent crime in *Lockhart* was robbery and not blackmail, there is no problem in applying the rationale from *Lockhart* to the instant case.

Both crimes are offenses committed by a person against another individual,[3] and a separate crime occurs every time a different person is victimized. As the

---

[1] See Pa. R. Crim. P. 1406 (a) : "Whenever more than one sentence is imposed at the same time on a defendant, or whenever a sentence is imposed on a defendant who is incarcerated for another offense, such sentences shall be deemed to run concurrently *unless the judge states otherwise.*" [Emphasis added].

[2] *Commonwealth v. Mills,* 447 Pa. 163, 286 A. 2d 638 (1971) ; *United States v. Canty,* 469 F. 2d 114 (D.C. Cir. 1972) ; *Commonwealth v. Walker,* 219 Pa. Superior Ct. 167, 280 A. 2d 590 (1971) ; *Commonwealth ex rel. Shaddock v. Ashe,* 340 Pa. 286, 17 A. 2d 190 (1940) ; *Commonwealth v. Glover,* 397 Pa. 543, 156 A. 2d 114 (1959).

[3] See, Act of June 24, 1939, P. L. 872, §801 (18 P.S. §4801), (blackmail), and Act of June 24, 1939, P. L. 872, §704 (18 P.S. §4704), (robbery and robbery by assault and force).

court held in *Lockhart,* where one person, holding money for several people, is robbed, there is but one offense because there is only one directly involved victim. However, where there is more than one immediate victim, the crime is multiple even if there is but one overall scheme or plan. We, therefore, hold that where a black-mailer plies his trade on more than one victim, a separate conviction for each victim will lie, even if all are blackmailed at the same time. *Cf. Commonwealth ex rel. Lockhart v. Myers,* 193 Pa. Superior Ct. 531, 165 A.2d 400 (1960) ; *Commonwealth ex rel. Spencer v. Banmiller,* 186 Pa. Superior Ct. 99, 140 A.2d 860 (1958) ; *Commonwealth ex rel. Kitzinger v. Claudy,* 173 Pa. Superior Ct. 453, 98 A.2d 457 (1953).

Appellant next contends that the trial judge improperly limited the cross-examination of the accusing witnesses. Specifically, it is argued that the defense was not permitted to extensively cross-examine the Commonwealth's chief witness, Paul Rubin, as to his drug involvement, and also that the defense was restricted in its interrogation of Gary Hale and Bruce Berlin.

In disposing of these issues, it is helpful to note that four defendants were tried together, each represented by different counsel. Numerous witnesses were called by the District Attorney and defense counsel. Objections made by one defendant were often echoed by another defendant. One or more of the defendants would at times object to questions asked witnesses by other defendants. Evidence did not always apply to all defendants, and special limiting instructions were often required. The classic concept of the adversary system wherein the prosecution and defense do battle with legal swords was somewhat compromised by the general fray involving five attorneys. In view of the totality of the circumstances, the trial judge did not abuse his discretion in limiting the cross-examination.

As to Rubin, an examination of the record leads us to believe that the complaint stems from the cross-examination carried on by a co-defendant, and not appellant. Also, appellant made no objection to the restriction of the cross-examination. Although this alone raises doubt as to appellant's right to raise the objection, *cf. Commonwealth v. Jennings*, 446 Pa. 294, 285 A.2d 143 (1971), we need not base our decision on this alone.

Paul Rubin was first examined by the District Attorney and then cross-examined by each of the four defense attorneys. Rubin was quite candid in his discussions about his involvement in the drug culture. It was eminently clear to the jury that Rubin was a drug user as well as a drug pusher, and further questions on that point would have been repetitive. Further, appellant's contention that Rubin may have been subsidized with drugs by the government while he was in protective custody was firmly denied by Rubin.

A witness is not per se incompetent to testify merely because it is established that he is a drug addict. *Commonwealth v. Parks*, 453 Pa. 296, 309 A.2d 725 (1973). Once the fact of Rubin's drug involvement was properly before the jury, it was for them to weigh the effect that had on Rubin's credibility. *Commonwealth v. Parks, supra*. Although the jury was well aware of Rubin's drug use, they resolved the issue of credibility in his favor. There was no abuse of discretion which warrants disturbing the jury's findings.

Appellant contends that the trial judge improperly restricted the interrogation of Gary Hale concerning promises of non-prosecution in exchange for testifying for the Commonwealth. Appellant's attorney, Mr. Lipschitz, asked Hale: "Q. You would want them prosecuted and you would not want yourself to be prosecuted for any part that you played in it; is that correct? A. I would have liked it to be that way. Q. And you didn't want to be prosecuted for anything else that you had

478

done, that you may disclose."[4]  The last was objected to by the District Attorney and sustained.  Appellant was not permitted to further inquire into any possible deals between Hale and the prosecution.

While the law is clear that a defendant has the right to show by cross-examination that a witness called against him has a bias or an interest in the result of a trial, it is also clear that the trial judge has discretion in determining the point at which further cross-examination will be of no value, and his ruling will not be reversed in the absence of an abuse of that discretion. *Commonwealth v. Schmidt*, 437 Pa. 563, 263 A.2d 382 (1970); *Commonwealth v. Cheatham*, 429 Pa. 198, 239 A.2d 293 (1968).[5]  In the present case, counsel for appellant in effect asked if there had been an agreement and Hale answered in the affirmative.  In addition, the trial judge in his charge to the jury remarked that Hale and another witness had been told they would not be prosecuted.  The jury was aware of the circumstances under which Hale was testifying and there was no abuse of discretion in the limiting of further cross-examination which would warrant reversing the lower court's decision on this matter.

There was also an objection over the restriction of the cross-examination of Bruce Berlin concerning his avarice.  However, his motives for entering into this drug venture were quite clear.  The witness testified that he expected to make a profit on the resale.  Appellant's additional questions on the witness' greed were repetitive and largely irrelevant.  The trial judge properly limited this cross-examination.

Appellant alleges that the Commonwealth's witnesses made prejudicial comments which made a fair trial impossible.  First, appellant complains of refer-

[4] NT 620-621.

[5] See also, *First National Bank of Pike County v. Department of Banking and Bank of Matamoras*, 7 Pa. Commonwealth Ct. 603, 300 A.2d 823 (1973).

ence by Commonwealth witness Michael Becker to possible involvement by the Mafia. This comment by Becker was responsive to questions asked by co-defendant's counsel as to whether Rubin had tried to dissuade him from seeing an attorney. Becker first answered the question with a simple "No, Sir, he didn't," but upon prodding by defense counsel, he added the comment about the Mafia. Counsel objected to the remark as being non-responsive and prejudicial. The lower court refused to order a mistrial but did offer to instruct the jury to disregard the comment. Counsel declined this offer and the trial continued.

Appellant also complains that witness Gary Hale mentioned that Martin Hess had been killed in an explosion. Martin Hess had some connection with the affair and would have been called as a witness for the Commonwealth. It was agreed upon before trial that the jury would be informed by counsel that Hess was not called to testify because he had died. No other comment concerning Hess was to be made.

As to both objections, we agree with the trial court that the statements were not so prejudicial as to require a new trial. The Pennsylvania Supreme Court has stated : " 'Every unwise or irrelevant remark made in the course of a trial by a judge, a witness, or counsel does not compel the granting of a new trial. A new trial is required when the remark is prejudicial; that is, when it is of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial. [citations omitted].' Commonwealth v. Phillips, 183 Pa. Superior Ct. 377, 382, 132 A.2d 733, 736 (1957)." *Commonwealth v. Goosby,* 450 Pa. 609, 611, 301 A.2d 673, 674 (1973).[6] We fail to see how either comment "deprived the defendant of a fair and impartial trial."

---

[6] Compare with, *Commonwealth v. Horvath,* 446 Pa. 11, 285 A.2d 185 (1971) (improper remark severely prejudicial).

Appellant further complains that it was improper for Paul Rubin to reveal that he was in protective custody. In fact, the record reveals that the question of protective custody was first raised by appellant's counsel when he questioned Rubin on how he supported himself. At this point the District Attorney objected and asked for a sidebar conference. All four defense attorneys were warned that questioning on Rubin's income would lead to the disclosure of his protective custody. Notwithstanding, Rubin was later again questioned on his present work by co-defendant's counsel, and was finally asked directly by co-defendant's counsel if he was in protective custody. There was no objection made, and Rubin answered in the affirmative. Appellant cannot now complain that the witness answered the questions asked. Allegations of error must be properly raised by specific objection at the time of trial. *Commonwealth v. Williams*, 458 Pa. 319, 326 A.2d 300 (1974).

Appellant's final arguments concern allegedly prejudicial comments made by the District Attorney and by co-counsel during their closing arguments. In his remarks, the District Attorney explained why he did not prosecute the witnesses who were involved in the original drug purchase. Co-counsel mentioned, after calling several character witnesses for a co-defendant, that if his client had had a police record, the District Attorney could have asked these witnesses about it. Appellant's motion for a mistrial was denied by the court below.

The court in *Commonwealth v. Hoffman*, 439 Pa. 348, 266 A.2d 726 (1970), dealt with improper remarks by opposing counsel and gave a standard for determining if a reversal is warranted. The court, quoting *Commonwealth v. Meyers*, 290 Pa. 573, 139 A. 374 (1927), stated: "Where, under all the circumstances of the case, the verdict rendered is a just one, the language of the prosecuting officer [or co-defendant's counsel]

which will justify a reversal must be such that its un-avoidable effect would be to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant, so that they could not fairly weigh in his behalf such circumstances of doubt, extenuation or degree of guilt that may be present in the case, and thus make them unable to render a true verdict." 439 Pa. at 355, 266 A.2d at 730. The remarks complained of in the present case do not rise to the required standard. In fact, the remarks, when viewed as part of the entire closing statements were not prejudicial. No curative remarks to the jury were needed. The matter of declaring a mistrial is largely within the discretion of the trial court, *cf. Commonwealth v. Fennell,* 444 Pa. 1, 278 A.2d 884 (1971), and we see no abuse of that discretion.

The judgments of sentence are affirmed.