J-S52015-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JAKWAN ARCHIE GREEN, | : | |
| | : | |
| Appellant | : | No. 694 MDA 2017 |

Appeal from the PCRA Order April 10, 2017
in the Court of Common Pleas of Lancaster County,
Criminal Division, No(s):  CP-36-CR-0005217-2011

BEFORE:  GANTMAN, P.J., LAZARUS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:        **FILED OCTOBER 12, 2017**

Jakwan Archie Green ("Green"), *pro se*, appeals from the Order dismissing his Petition filed pursuant to the Post Conviction Relief Act ("PCRA").  ***See*** 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The PCRA court aptly summarized the relevant factual and procedural history in its Opinion, which we adopt for the purpose of this appeal.  ***See*** PCRA Court Opinion, 4/10/17, at 1-6.

The PCRA court dismissed Green's Amended Petition on April 10, 2017. Green filed a timely Notice of Appeal.[1]

On appeal, Green raises the following questions for our review:

I. [Were] trial counsel[] ineffective for failure to investigate and interview a potential witness[,] which prejudice[d Green's right] to a fair trial?

---

[1] The PCRA court did not order Green to file a Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal.

II. [Were] trial and appella[te] counsel[] deficient in [their] representation for failure to suppress the [Commonwealth] witness['s] statement on grounds of inconsistent statements and hearsay?

III. [Were] trial counsel[] ineffective for failure to obtain an expert witness to disqualify the [Commonwealth] witness['s] ability to stand trial as a witness, where it was said that this witness suffered from mental disabilities[?]

IV. [Were] trial counsel[] ineffective for failure to raise prosecutorial misconduct, during trial and direct appeal, where the [Commonwealth] knowing[ly] used a [perjured], fabricated statement to gain an arrest and conviction against [Green,] which violated [Green's] "due process rights" and the "due process clause"?

V. [Were] trial counsel[] ineffective for failure to raise and preserve a claim challenging the insufficiency of the evidence pursuant to Pa.R.Crim.P. 606(A)(2)[,] (7)[?]

VI. Was the [j]udgment of sentence illegal, due to the extent that [Green's] conduct "did not" violate "shared intent[,]" [a] basic element required in which [Green] was convicted[,] to sustain a first[-]degree murder and criminal conspiracy [conviction] on the basis of co-conspirator liability in violation of the 14th [A]mendment [] of the United States Constitution[,] and a miscarriage of justice occurred thereto?

VII. Did the [trial court] abuse [its] discretion by rendering a verdict against the weight of the evidence?

VIII. Did the government official[]s of Lancaster County abuse their discretion, violating [Green's] 14th Amendment rights, by committing a misconduct in office[]?

Brief for Appellant at 5-6 (unnumbered; issues renumbered, some capitalization omitted).

Our standard of review of a PCRA court's [dismissal] of a petition for post[-]conviction relief is well-settled: We must examine whether the record supports the PCRA court's determination, and whether the PCRA court's determination is

- 2 -

free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

***Commonwealth v. Franklin***, 990 A.2d 795, 797 (Pa. Super. 2010) (citation omitted).

Green's first five claims challenge the effectiveness of his trial counsel. The PCRA permits relief when a conviction is the result of "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii).

It is well-settled that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.

***Franklin***, 990 A.2d at 797 (citations omitted). "A claim of ineffectiveness will be denied if the petitioner's evidence fails to satisfy any one of these prongs." ***Commonwealth v. Roane***, 142 A.3d 79, 88 (Pa. Super. 2016) (citation omitted).

In his first claim, Green argues that his trial counsel were ineffective for failing to investigate and interview Rebecca Hall ("Hall"), the girlfriend of Green's co-defendant, Christopher Lassitter ("Lassitter"), as a potential witness. ***See*** Brief for Appellant at 18-22. According to Green, Hall told the police about a conversation between Lassiter and co-defendant Oscar

Martinez ("Martinez"), during which Martinez stated that he "want[ed] to kill everybody in the house[,]" and Lassiter responded, "Do what you got to do." *Id.* at 19. Green contends that Hall's testimony would tend to show that "the gunm[a]n's intentions were his own." *Id.* at 18.

In its Opinion, the PCRA court set forth the relevant law, addressed Green's claim, and concluded that it lacks merit. *See* PCRA Court Opinion, 4/10/17, at 17-19. Because we conclude that the PCRA court's determinations are supported by the record and free of legal error, we affirm on this basis as to Green's first claim. *See id.*

We will address Green's next three issues together, as each one relates to the testimony of Taria Lowden ("Lowden"). In his second claim, Green argues that his trial counsel were ineffective for failing to "suppress" Lowden's statement to police "on the grounds of inconsistent statement and hearsay." Brief for Appellant at 22. Green claims that Lowden's statement, which he believes was false, was obtained through intimidation and coercion by the police. *Id.* at 22, 23-24. Green asserts that without Lowden's testimony, the Commonwealth could not prove that he was involved in the conspiracy. *Id.* at 25.

In his third claim, Green avers that his trial counsel were ineffective for failing to retain an expert witness to disqualify Lowden from testifying at trial, due to her "mental disabilities." *Id.* at 25. Green claims that Lowden was incompetent to testify because she suffers from bi-polar disorder, and

because she was intoxicated on the night of the murder. *Id.* at 26; *see also id.* (wherein Green argues that an expert could explain that both bi-polar disorder and intoxication can affect memory). Green contends that he was prejudiced because "[i]f[] an expert would have been obtained, [Lowden] … could have been impeached and eliminated from the record as a credi[ble] witness…." *Id.* at 27.

In his fourth claim, Green asserts that his trial counsel were ineffective for failing to raise a claim of prosecutorial misconduct, based on the use of purportedly perjured testimony by Lowden. *Id.* at 29. Green claims that the prosecutor knew that Lowden provided perjured testimony at trial because the prosecutor was aware that Hall had made a statement that contradicted Lowden's testimony. *Id.* at 30-31. Green argues that he was prejudiced because the trial court would have declared a mistrial if his trial counsel had raised the issue of prosecutorial misconduct. *Id.* at 31.

In its Opinion, the PCRA court addressed Green's claims regarding Lowden's testimony, and concluded that they lack merit. *See* PCRA Court Opinion, 4/10/17, at 20-24. Because we conclude that the PCRA court's determinations are supported by the record and free of legal error, we affirm on this basis as to Green's second, third, and fourth claims. *See id.* As an addendum, we note that Green failed to demonstrate that the outcome of trial would have been different if not for counsel's purported errors. *See Franklin, supra*; *see also Commonwealth v. Charleston*, 94 A.3d 1012,

1026 (Pa. Super. 2014) (stating that "unsupported speculation" does not establish a reasonable probability that the outcome of trial would have been different).

In his fifth claim, Green argues that his trial counsel were ineffective for failing to raise and preserve a challenge to the sufficiency of the evidence. Brief for Appellant at 27. Green claims that he "never harbored a weapon, shared intent, malice or a motive to harm or kill anyone in the victim['s] household." *Id.* at 28.

In its Opinion, the PCRA court set forth the relevant law, addressed Green's claim, and concluded that it lacks merit. *See* PCRA Court Opinion, 4/10/17, at 26-32. We adopt the sound reasoning of the PCRA court as to Green's fifth claim. *See id.*

In his sixth claim, Green argues that his judgment of sentence is illegal because the Commonwealth did not establish that he shared an intent to commit first-degree murder, and therefore, he cannot be guilty of the offense as a co-conspirator. Brief for Appellant at 11-12. Green contends that the evidence presented at trial showed that the crime "revolved around" Lassitter, and a recent attack on the mother of Lassitter's child by "a group of Latin King females." *Id.* at 15. Green asserts that he did not speak with Lassitter "concerning a plan to commit an unlawful or prohibited act[,] and there is no evidence that can prove or say otherwise." *Id.* Green concedes that he spoke with the victim's boyfriend (who had allegedly ordered the

attack on the mother of Lassitter's child), but argues that he "went to the home to defuse any further problem." *Id.* Green states that he walked to the victim's door with Martinez, but claims that he had no reason to believe that Martinez intended to commit a criminal act. *Id.*

Although Green states that his judgment of sentence is illegal, his argument challenges the sufficiency of the evidence supporting his conviction.[2] A challenge to the sufficiency of the evidence is not a cognizable claim under the PCRA. *See* 42 Pa.C.S.A. § 9543(a)(2); *see also Commonwealth v. Price*, 876 A.2d 988, 995 (Pa. Super. 2005) (rejecting a sufficiency claim that was raised on PCRA appeal without an ineffective assistance of counsel analysis because it is not cognizable under the PCRA); *Commonwealth v. Bell*, 706 A.2d 855, 861 (Pa. Super. 1998) (holding that sufficiency claims are not cognizable under the PCRA). Moreover, even if we could consider the merits of Green's claim, we would conclude that the evidence presented at trial was sufficient to support his conviction, based upon the reasons set forth by the PCRA court. *See* PCRA Court Opinion, 4/10/17, at 26-32. Accordingly, Green is not entitled to relief on this claim.

In his seventh claim, Green contends that the trial court abused its discretion by rendering a verdict against the weight of the evidence. Brief

---

[2] Even if Green had properly challenged the legality of his sentence, we would conclude that the trial court did not impose an illegal sentence. In fact, Green, who was an adult at the time of the murder, received a mandatory sentence for the crime of first-degree murder. *See* 18 Pa.C.S.A. § 1102(a)(1).

for Appellant at 31. Green argues that the trial court overlooked testimony that would prove that he did not share an intent to commit an unlawful act. *Id.* at 32-33. Green also challenges the credibility of Lowden's testimony. *Id.* at 33.

A challenge to the weight of the evidence is not a cognizable claim under the PCRA. *See* 42 Pa.C.S.A. § 9543(a)(2). Moreover, Green could have raised a challenge to the weight of the evidence on direct review but failed to do so, and therefore, his claim is waived. *See* 42 Pa.C.S.A. § 9544(b) (providing that, under the PCRA, "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post[-]conviction proceeding."); *see also Commonwealth v. Rush*, 838 A.2d 651, 660 (Pa. 2003) (stating that "[a]t the collateral review stage, allegations of trial court error are waived, since they were not raised at the first opportunity for review."). Therefore, Green is not entitled to relief on his seventh claim.[3]

In his eighth claim, Green asserts that government officials in Lancaster County (*i.e.*, the District Attorney and detectives) abused their

---

[3] Even if we could consider Green's claim, which asks us to re-weigh the evidence and assess the credibility of the witnesses presented at trial, we would agree with the PCRA court's conclusion that a challenge to the weight of the evidence would be without merit. *See* PCRA Court Opinion, 4/10/17, at 32-33; *see also Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015) (stating that "[t]he weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses." (citation and brackets omitted)).

discretion by pursuing a case against him based on corruption, prejudice and racism. Brief for Appellant at 34-35. Additionally, Green continues his arguments that there was insufficient evidence to support his convictions, and that Hall should have been called as a witness to contradict Lowden's testimony and establish that Green was not part of the conspiracy. *Id.* at 38-39.

Green's claim does not fall within one of the categories of errors for which the PCRA provides a remedy. *See* 42 Pa.C.S.A. § 9543(a)(2). Moreover, Green's claim is waived because he could have raised this issue on direct appeal but failed to do so. *See* 42 Pa.C.S.A. § 9544(b); *see also Commonwealth v. Abdul-Salaam*, 808 A.2d 558, 560 (Pa. 2001). Thus, Green is not entitled to relief on his final claim.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/12/2017

**IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA**
**C R I M I N A L**

COMMONWEALTH OF PENNSYLVANIA :

　　　　　　　v. 　　　　　　　　　:　　No. 5217 - 2011

JAKWAN ARCHIE GREEN 　　　:

**O P I N I O N**

BY:　ASHWORTH, J., APRIL 10, 2017

Before the Court are Jakwan Archie Green's original and amended *pro se*

petitions filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§

9541-46. For the reasons set forth below, these petitions will be dismissed without a

hearing.[1]

## I.　Procedural Background

The relevant facts and the procedural history of this case may be summarized as

follows. On April 16, 2011, at approximately 12:52 a.m., Green, Oscar Martinez, and

Christopher Lassitter participated in the murder of Diana Spencer at her residence in

the City of Lancaster. Martinez would later admit to shooting the victim multiple times

when she answered Green's knock on the door. Lassitter provided the loaded gun and

the get-away car. All three co-conspirators were arrested and charged with first-degree

---

[1]Under Rule 907 of the Pennsylvania Rules of Criminal Procedure, a PCRA court may dispose of post conviction collateral relief petitions without a hearing if it is satisfied after reviewing the materials submitted that no genuine issues of material fact exist and that the petitioner is not entitled to post conviction relief.



murder and criminal conspiracy to commit murder.[2] Thereafter, the Commonwealth gave notice of its intent to seek the death penalty.[3]

Green filed an omnibus pre-trial motion on July 13, 2012, seeking, *inter alia*, to suppress video and audio recordings taken from a security camera used by a business located near the residence where the killing in this case occurred. Green argued that the taping of the conversation between him and co-defendant Martinez immediately before the shooting violated Pennsylvania's Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S.A. § 5701 *et seq*. After an evidentiary hearing, an order was entered granting the suppression of the audio recording of oral communications between the two individuals seen on the video. I further denied suppression of the video portion of the recording, as well as portions of the audio recording that contained sounds other than oral communications.

In exchange for the Commonwealth's withdrawal of the death penalty as a sentencing option, Green waived his right to a jury trial.[4] After a bench trial, Green was found guilty of both charges on January 10, 2013. He was sentenced on February 28, 2013, to the mandatory sentence of life in prison without parole for the first-degree

---

[2] 18 Pa.C.S.A. § 2501(a) and 18 Pa.C.S.A.§ 903(a)(1), respectively.

[3] The aggravating circumstance the Commonwealth identified at that time was that "in the commission of the offense the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense." 42 Pa.C.S.A. § 9711(d)(7). The Commonwealth had evidence that an adult female, Crystal Zook, was within feet of the victim in this case when she was shot and killed. In addition to Ms. Zook, there was evidence that at least two young children and two adults were in the house at the time of the shooting.

[4] Co-defendant Martinez, No. 2587-2011, entered a plea of guilty to first-degree murder in exchange for the Commonwealth withdrawing the death penalty. Co-defendant Lassitter, No. 2583-2011, entered a plea of guilty in exchange for the Commonwealth reducing the first-degree murder charge to third-degree murder.

2

murder conviction, and a concurrent sentence of 20 to 40 years' incarceration for the criminal conspiracy conviction. Green was represented at trial and sentencing by Cory J. Miller, Esquire, and Christopher P. Lyden, Esquire.

A timely notice of appeal to the Superior Court of Pennsylvania was filed on February 28, 2013.[5] *See* No. 440 MDA 2013. On November 15, 2013, a three-judge panel of the Superior Court affirmed the conviction and judgment of sentence in an unpublished memorandum. *See* **Commonwealth v. Green**, 91 A.3d 1286 (Table) (Pa. Super. 2013); *see also* **Commonwealth v. Green**, 2013 WL 11250357 (Memo. Op.) (Pa. Super. 2013). The Pennsylvania Supreme Court denied allowance of appeal in the matter on October 7, 2014.[6] *See* **Commonwealth v. Green**, 627 Pa. 770, 101 A.3d 785 (Table) (Pa. Oct. 7, 2013); *see also* No. 197 MAL 2014. Green was represented on appeal by Attorney Lyden.

Between November 21, 2014 and June 4, 2015, Green filed four *pro se* requests for transcripts for purposes of filing a petition for post conviction relief. Each request

_____

[5]Green furnished a statement of errors complained of on appeal which raised just one issue: whether the court erred in failing to suppress the video portion of the surveillance recording depicting Green speaking to a co-defendant immediately before the killing.

[6]While the petition for allowance of appeal was pending before the Supreme Court, Green commenced a civil action by filing, *pro se*, a "petition for writ of *habeas corpus ad subjiciendum*," challenging this Court's subject matter jurisdiction in the criminal homicide matter. Green requested the dismissal of his case and his immediate release from custody. Because the PCRA encompasses all common law and statutory remedies for obtaining post conviction collateral relief, including *habeas corpus*, Green's petition was deemed a petition filed pursuant to the PCRA. *See* 42 Pa.C.S.A. § 9542; 42 Pa.C.S.A. § 6503; **Commonwealth v. Turner**, 622 Pa. 318, 80 A.3d 754, 770 (2013). Given the fact that Green's petition for allowance of appeal was pending before the Supreme Court, the PCRA petition was dismissed as premature. *See* **Commonwealth v. Lark**, 560 Pa. 487, 493, 746 A.2d 585, 588 (2000) (holding that when an appeal is pending a post conviction petition cannot be filed until the resolution of the pending appeal "by the highest state court in which review is sought.").

3

was denied, as there was no pending proceeding that would entitle Green to the relief he requested.[7] On June 15, 2015, Green filed a *pro se* "Petition for Writ of Mandamus" to the Supreme Court of Pennsylvania, which was deemed to be a timely Notice of Appeal from the last order of June 4, 2015, denying Green's request for transcripts.

On September 18, 2015,[8] Green filed, *pro se*, a timely[9] petition for post conviction collateral relief challenging the effectiveness of his trial and appellate counsel. This petition was stayed pending Green's appeal to the Superior Court of Pennsylvania from my Order of June 4, 2015, denying Green's *pro se* request for transcripts. On October 14, 2015, that appeal was dismissed by the Superior Court.

Pursuant to Rule 904(A) of the Pennsylvania Rules of Criminal Procedure, Dennis C. Dougherty, Esquire, was appointed to represent Green on his collateral

---

[7] A trial court is not required to comply with a defendant's request for transcripts in order to pursue relief in a post conviction proceeding where no such action is pending. *See* **Commonwealth v. Crider**, 735 A.2d 730 (Pa. Super. 1999); **Commonwealth v. Martin**, 705 A.2d 1337 (Pa. Super. 1998); **Commonwealth v. Ballem**, 482 A.2d 1322 (Pa. Super. 1984).

[8] The pleading is deemed filed on the date of mailing, September 18, 2016, rather than the date of docketing, September 21, 2016, pursuant to the "prisoner mailbox rule." *See* **Commonwealth v. Crawford**, 17 A.3d 1279, 1281 (Pa. Super. 2011) ("Under the prisoner mailbox rule, we deem a *pro se* document filed on the date it is placed in the hands of prison authorities for mailing.").

[9] For purposes of the PCRA, "a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States . . . or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3). Here, Green's petition for allowance of appeal was denied by the Pennsylvania Supreme Court on October 7, 2014. As Green did not file a petition for writ of *certiorari* with the United States Supreme Court, his judgment of sentence became final on January 5, 2015, when the period for filing a petition expired. *See* U.S. Sup.Ct. Rule 13, 28 U.S.C.A. (providing "[a] petition for writ of *certiorari* seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when filed with the Clerk within 90 days after entry of the order denying discretionary review."). Accordingly, pursuant to section 9545(b), Green had one year from January 5, 2015, in which to file a timely PCRA petition. Green filed the instant petition on September 18, 2015; therefore, the petition is timely.

4

claims and was granted leave to file an amended petition. After a conscientious review of the entire record, and after having engaged the services of a private investigator to locate and interview witnesses in this matter, PCRA counsel concluded that the petition did not present any issues of arguable merit and was frivolous as a matter of law. Accordingly, a "no merit" letter[10] and petition to withdraw as counsel were submitted on May 23, 2016.

After reviewing the *pro se* petition and counsel's "no merit" letter, I found that there were no disputed issues of fact, Green was not entitled to relief, and no purpose would be served by any further proceedings. Therefore, pursuant to Pa.R.Crim.P. 907(1), I filed a notice of my intention to dismiss the petition without a hearing on May 24, 2016. Green was given 30 days to file an amended petition or to otherwise respond to the Rule 907 Notice. After receiving an extension of time, Green filed amended PCRA petitions on June 16, 2016, July 12, 2016, July 20, 2016, and August 4, 2016. Green also requested copies of the suppression, trial and sentencing transcripts for purposes of further responding to the Rule 907 Notice. I granted that request on August 22, 2016, and gave Green an additional 60 days to supplement his Rule 907 response after review of the transcripts. A memorandum of law in support of the prior amended PCRA petitions was filed by Green on August 29, 2016.

Green also petitioned for an order "compel[ling] P.C.R.A. counsel to forward a complete copy of discovery" consisting of "nearly 5,000 pages" to aid him in his *pro se*

---

[10]This was filed pursuant to **Commonwealth v. Turner**, 518 Pa. 491, 544 A.2d 927 (1988), **Commonwealth v. Finley**, 379 Pa. Super. 390, 550 A.2d 213 (1988), and its progeny.

response. This petition was denied by Order entered on February 27, 2017.[11]

## II.   Discussion

Green claims he received ineffective assistance of counsel because his attorneys: (1) advised him to waive his preliminary hearing; (2) failed to file a writ of *habeas corpus* to challenge the sufficiency of the evidence to establish a *prima facie* case of murder of the first degree; (3) failed to challenge the aggravating circumstance cited by the Commonwealth in support of the death penalty; (4) failed to file a motion for recusal because I took a co-defendant's guilty plea and ruled on Green's suppression motion; (5) failed to negotiate a plea agreement with the Commonwealth; (6) failed to investigate, interview, subpoena and call several witnesses; (7) failed to impeach Commonwealth witness Taria Lowden; (8) failed to move to "suppress" the testimony of

---

[11]Green already had in his possession scores of pages of discovery as evidenced by the attachments to his supplemental PCRA petitions. (*See, for example*, June 16, 2016 Response to Rule 907 Notice, Exs. A (Rebecca Hall statement) and B (police supplemental report of Taria Lowden statement); Memorandum of Law in Support of Amended PCRA Petitions, Exs. A, B, C, H, I1, O.) Green's trial counsel received all of the Commonwealth's discovery. Moreover, PCRA counsel reviewed extensive volumes of discovery. (*See* PCRA Counsel's No-Merit Letter at 1.) Green's request failed to demonstrate any exceptional circumstances to support the production of the same thousands of pages of discovery reviewed by his trial and PCRA attorneys. Rather, in his petition, Green requested "nearly 5,000 pages" of discovery contained in trial counsel's file "to prove a violating [sic] of his constitutional rights to effective representation and a fair trial," and to expose "exculpatory evidence that trial counsel(s) failed to produce at trial, which negated the petitioner of being aware of any crime, that was formulated before his arrival to the area in which the crime occurred." (*See* Petition to Compel of September 26, 2016, at ¶¶ 1-2.) Green, however, failed to identify specific documents or items to support his claims. Thus, Green appeared to wish to embark on an impermissible "fishing expedition" based on bald assertions and conclusory allegations. *See* **Commonwealth v. Chhea**, 2015 WL 6957265 *4 (Pa. Super. June 23, 2015). This Court saw no reason to believe that the requested documents would show that Green was entitled to relief. Rather, the available documents in the court record, along with PCRA counsel's "no merit" letter, amply support the conclusion that Green's post conviction collateral claims must be dismissed as meritless.

6

Ms. Lowden due to her incompetency and bias; (9) failed to engage an expert witness to disqualify Ms. Lowden from testifying due to her "mental issues/disabilities"; (10) failed to raise prosecutorial misconduct for using the perjured testimony of Ms. Lowden; (11) failed to introduce exculpatory evidence at trial; (12) failed to raise abuse of discretion by the Court for sentencing him to life without parole; (13) failed to challenge the life without parole sentence under **Miller v. Alabama**, 567 U.S. 460 (2012), and **Graham v. Florida**, 560 U.S. 48 (2010); and (14) failed to challenge the sufficiency and the weight of the evidence on appeal. (*See* Original 2015 PCRA Petition, June 16, 2016 Response to Rule 907 Notice, July 12, 2016 Amended PCRA Petition, and July 20, 2016 Supplemental PCRA Petition.)

In order to prevail on a claim of ineffective assistance of counsel made in the post conviction context, a defendant must overcome the presumption that counsel is effective by establishing by a preponderance of the evidence that: (1) the underlying claim has arguable merit; (2) trial counsel had no reasonable basis for proceeding as he did; and (3) the defendant suffered prejudice. *See* 42 Pa.C.S.A. § 9543(a)(2)(ii); **Commonwealth v. Spotz**, 616 Pa. 164, 187, 47 A.3d 63, 76 (2012) (*citing* **Commonwealth v. Pierce**, 515 Pa. 153, 158-59, 527 A.2d 973, 975-76 (1987)). The client has the burden of establishing counsel's ineffectiveness because counsel is presumptively effective. Id.

With respect to whether counsel's acts or omission were reasonable, defense counsel is accorded broad discretion to determine tactics and strategy. **Commonwealth v. Fowler**, 447 Pa. Super. 534, 670 A.2d 1153 (1996), *aff'd* 550 Pa.

7

152, 703 A.2d 1027 (1997). The applicable test is not whether alternative strategies were more reasonable, employing a "hindsight" evaluation of the record, but whether counsel's decision had *any* reasonable basis to advance the interests of the defendant. **Commonwealth v. Chmiel**, 612 Pa. 333, 361, 30 A.3d 1111, 1127 (2011). The appellate courts will conclude that counsel's chosen strategy lacked a reasonable basis only if the defendant proves that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." **Commonwealth v. Williams**, 587 Pa. 304, 312, 899 A.2d 1060, 1064 (2006) (citation omitted). Counsel cannot be ineffective for failure to pursue and preserve a meritless issue. **Commonwealth v. Rivera**, 631 Pa. 67, 108 A.3d 779, 789 (2014).

To establish the prejudice prong, the defendant must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness. **Chmiel**, 612 Pa. at 362-63, 30 A.3d at 1127-28. "We stress that boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a defendant's burden to prove that counsel was ineffective." Id. (*quoting* **Commonwealth v. Paddy**, 609 Pa. 272, 292, 15 A.3d 431, 443 (2011)). Where a petitioner has not met the prejudice prong of the ineffectiveness standard, the claim may be dismissed on that basis alone without a determination of whether the arguable merit and client's interest prongs have been met. **Commonwealth v. Wright**, 599 Pa. 270, 320-21, 961 A.2d 119, 148-49 (2008); **Commonwealth v. Zook**, 585 Pa. 11, 26, 887 A.2d 1218, 1227 (2005).

## A. Waiver of Preliminary Hearing and Failure to File *Habeas Corpus* Motion

Green first maintains that counsel was ineffective for waiving his preliminary hearing and for not filing a *habeas corpus* motion to test whether the Commonwealth could present a *prima facie* case.[12]  Specifically, Green argues counsel should have challenged the Commonwealth's case which he contends was based upon "inconsistent statements given by a biased witness." (*See* Memorandum of Law in Support of Amended PCRA Petitions at 5.)  Green suggests that had counsel not waived the preliminary hearing and challenged the evidence the magisterial district court would have dismissed the charges.

Our Superior Court has held that waiving a preliminary hearing is not ineffectiveness of counsel when the defendant is later convicted at trial, stating:

> The absence of a preliminary hearing, however, did not so impair the truth determining process as to require that appellant be discharged. Here, the case was tried and the evidence was submitted to the court which, as trier of the facts, found not only that the Commonwealth had established a *prima facie* case of guilt but that appellant's guilt had been proved beyond a reasonable doubt.  Any deficiency in the preliminary hearing procedure, therefore, was harmless.  Because the truth determining process was not impaired by counsel's alleged ineffectiveness, the P.C.R.A. court did not err when it dismissed appellant's petition for post conviction relief.  Appellant failed to show that he had been prejudiced by counsel's failure to assert post-trial the absence of a pre-trial preliminary hearing.

---

[12]While there is no federal or state constitutional right to a preliminary hearing, **Commonwealth v. Jacobs**, 433 Pa. Super. 411, 415, 640 A.2d 1326, 1327 (1994), defendants have a constitutional right to counsel at a preliminary hearing since it is considered a "critical stage" of the criminal proceedings. **Coleman v. Alabama**, 399 U.S. 1, 7 (1970). Thus, defendants do have a constitutional right to effective counsel at the preliminary hearing stage of the proceedings. *See* **Commonwealth ex rel. Buchanan v. Verbonitz**, 525 Pa. 413, 417-18, 581 A.2d 172, 174 (1990).

9

**Commonwealth v. Lyons**, 390 Pa. Super. 464, 568 A.2d 1266, 1268 (1989) (citations omitted). *See also* **Commonwealth v. Stultz**, 114 A.3d 865, 881 (Pa. Super. 2015). Thus, once a defendant is tried and convicted, it is clear that *prima facie* evidence was introduced and, therefore, the defendant cannot establish actual prejudice if no preliminary hearing was held. *See also* **Commonwealth v. Sanchez**, 623 Pa. 253, 82 A.3d 943, 984 (2013) (in the direct appeal context, our Supreme Court concluded that "once a defendant has gone to trial and has been found guilty of the crime or crimes charged, any defect in the preliminary hearing is rendered immaterial.").

Here, Green was convicted of first-degree murder and criminal conspiracy to commit murder following a bench trial. That judgment of sentence was affirmed by the Superior Court. Therefore, any ineffectiveness from waiving the preliminary hearing or failing to file a *habeas corpus* motion did not prejudice Green.

Moreover, Green's complaints regarding his waived preliminary hearing and the *prima facie* case against him rest on assertions that Taria Lowden could have been impeached based on prior inconsistent statements and bias. Credibility determinations, however, are not made at a preliminary hearing. **Commonwealth v. Landis**, 48 A.3d 432, 444 (Pa. Super. 2012) (*en banc*). *See also* **Barber v. Page**, 390 U.S. 719, 725 (1968) (removing credibility as an issue at a preliminary hearing and limiting defense actions to negating the existence of a *prima facie* case conforms to the fact that a preliminary hearing is a much less searching exploration into the merits of the case); **Liciaga v. Court of Common Pleas of Lehigh County**, 523 Pa. 258, 262, 566 A.2d 246, 248 (1989) (magistrate is precluded from considering the credibility of a witness

10

who is called upon to testify during the preliminary hearing); **Commonwealth v. Tyler**, 402 Pa. Super. 429, 433, 587 A.2d 326, 328 (1991) (credibility is not an issue at a preliminary hearing). Thus, impeachment evidence is immaterial for purposes of a preliminary hearing and pre-trial *habeas corpus* motion. Consequently, counsel cannot be found ineffective for waiving the preliminary hearing or failing to file a *habeas corpus* motion.

## B.  Aggravating Circumstance in Support of Death Penalty

Next, Green argues counsel was ineffective for failing to challenge the aggravating circumstance cited by the Commonwealth in support of the death penalty. As noted above, the Commonwealth first filed a notice of its intention to seek the death penalty against all three co-defendants pursuant to 42 Pa.C.S.A. § 9711, and then filed a notice of its intent to consolidate the three capital cases for purposes of trial. On July 20, 2012, co-defendant Lassitter filed a pretrial motion seeking to bar the Commonwealth from relying upon Section 9711(d)(7) on the grounds that the Commonwealth's evidence was insufficient as a matter of law to establish this particular circumstance due to a lack of verifiable facts.[13] I addressed my reasons for denying Lassitter's motion to quash the aggravator in an opinion filed on November 5, 2012, and

---

[13]"It is well-established that the Commonwealth has no pre-trial burden of proving an aggravating factor." **Commonwealth v. Buck**, 551 Pa. 184, 191, 709 A.2d 892, 896 (1998). However, a defendant may file a pretrial motion to challenge the aggravating circumstances in case of a prosecutor's purposeful abuse where the aggravating circumstance is not based on verifiable facts. Id. In determining the propriety of the defendant's motion, the trial court will consider whether "the case is properly designated as capital, not whether each aggravating factor alleged is supported by evidence." Id. It is the defendant's burden to make the appropriate showing. Id. at 192, 709 A.2d at 896.

restate them here for purposes of Green's ineffective assistance claim, as they relate equally to Green.

Section 9711(d)(7) of the death penalty statute provides that an aggravating circumstance warranting the imposition of the death penalty includes any first-degree murder during which "the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense." 42 Pa.C.S.A. § 9711(d)(7). Although Lassitter conceded that the evidence in this case indicated that there were other people in proximity to the victim when she was fired upon five times, he argued that such persons were not in "such proximity as to be in jeopardy of suffering real harm," *citing* **Commonwealth v. Drumheller**, 570 Pa. 117, 808 A.2d 893 (2002). Our Supreme Court held in **Drumheller** that

> the grave risk of death aggravator applies to situations where the defendant in the course of killing his particular victim acts in a manner which endangers the lives of others close in proximity to the intended or actual victim. Sufficient evidence to support the application of the aggravating circumstance of creating a grave risk of harm to persons other than the murder victim, has been found by this Court in those instances where the other persons are **in close proximity to the decedent at the time of the murder**, and due to that proximity are **in jeopardy of suffering real harm**.

Id. at 144, 808 A.2d at 909 (emphasis in original) (citations and internal quotations omitted). Our Supreme Court has also held "the grave risk of death aggravator applies where there is potential for an errant, ricochet, or pass-through bullet; the endangered bystander need not be in the direct line of fire to be in grave risk of death."
**Commonwealth v. Brown**, 605 Pa. 103, 116, 987 A.2d 699, 707 (2009) (*citing*
**Commonwealth v. Wright**, 599 Pa. 270, 316, 961 A.2d 119, 146 (2008)).

12

The Commonwealth presented evidence that an adult female, Crystal Zook, was within feet of the victim in this case when she was shot and killed. In addition to Ms. Zook, there was evidence that at least two young children and two adults were in the house at the time of the shooting.[14] Clearly, there was a "nexus connect[ing] other persons in close proximity to the intended or actual victim to the zone of danger created by the defendant's actions in killing the victim." **Brown**, *supra* at 116, 987 A.2d at 707 (*citing* **Commonwealth v. Paolello**, 542 Pa. 47, 82, 665 A.2d 439, 457 (1995)). The potential for an errant, ricochet, or pass-through bullet existed in this case, thus, placing at least five persons within the zone of danger.

In light of these facts, I found that Lassitter failed to satisfy his burden of proving the absence of any evidence supporting the proffered aggravating circumstance. At a minimum, "evidence exist[ed] to create a factual dispute regarding whether the aggravating factor(s) exist[ed]." **Buck**, *supra* at 192, 709 A.2d at 896. Accordingly, I ruled no abuse of discretion by the prosecutor was evident, and I dismissed Lassitter's motion to quash the aggravator. This ruling applied equally to Lassitter's two co-defendants, Green and Martinez. Accordingly, Green's trial counsel will not be ruled ineffective for having failed to file a redundant, baseless motion to quash the aggravator.

---

[14]The Commonwealth had evidence there were two children and one adult on the first floor within feet of the victim at the time she was murdered, in addition to another child and adult on the second floor of the home. (*See* Commonwealth Response to Motion to Quash at ¶¶ 7-8.)

13

## C.    Motion for Recusal

Green further submits that his trial attorneys were ineffective for failing to file a motion for my recusal because I accepted a co-defendant's guilty plea and presided over Green's suppression motion.  Our Supreme Court has discussed the standards governing recusal, as follows:

> A trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case or whenever he believes his impartiality can be reasonably questioned. It is presumed that the judge has the ability to determine whether he will be able to rule impartially and without prejudice, and his assessment is personal, unreviewable, and final.
> . . .
> Additionally, it is the burden of the party requesting recusal to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially.

**Commonwealth v. Tedford**, 598 Pa. 639, 730-31, 960 A.2d 1, 55-56 (2008) (citations and quotations omitted).

Moreover, "the mere participation by the trial judge in an earlier stage of the proceedings does not provide a *per se* basis for requiring recusal of the trial judge." **Commonwealth v. Postie**, 110 A.3d 1034, 1038 (Pa. Super. 2015) (*quoting* **Commonwealth v. Lott**, 398 Pa. Super. 573, 581 A.2d 612, 615 (1990)).  The Superior Court in **Lott** noted:

> [W]hile it may be the better practice to have a different judge preside over trial than preside over pre-trial proceedings, such a practice is not constitutionally required and has not been made the basis for setting aside a verdict reached in an otherwise proper trial.  This principle appears to be based on the prevailing view that judicial fact-finders are capable of disregarding prejudicial evidence.

Id.  *See also* **Commonwealth v. Corbin**, 447 Pa. 463, 291 A.2d 307 (1972) (it is not

14

improper for the suppression judge to preside in a non-jury trial). Therefore, the failure of trial counsel to request my recusal as trial judge was not *per se*, without more, ineffective representation.

Here, Green could not have met his burden of demonstrating partiality, bias, or an abuse of discretion had a motion for recusal been filed by trial counsel. Green now asserts that as the suppression judge I became "a bias[ed] and prejudice[d] fact finder" by reason of having listened to the wiretap evidence, some of which I suppressed. (Memorandum of Law in Support of Amended PCRA Petitions at 13.) Such evidence, however, was not so prejudicial that I would have been unable to render an impartial verdict. Our Superior Court is "of the view that the trial judge has by training and experience developed instincts that permit the entry of determinations based solely upon relevant, admissible evidence and unaffected by irrelevant, inadmissible or prejudicial developments." *See* **Commonwealth v. Lewis**, 314 Pa. Super. 298, 307, 460 A.2d 1149, 1153 (1983) (*citing* **Corbin**, *supra*).

In the instant case, I was capable of rendering a fair decision regardless of what I heard at Green's suppression hearing or at co-defendant Martinez's guilty plea. I did not have any bias or prejudice towards Green that prevented me from rendering a fair and impartial verdict. Therefore, trial counsel was not ineffective by reason of a failure to request recusal.

Additionally, Green's decision to proceed to a bench trial with the suppression judge was freely and knowingly made. After the election to proceed without a jury, I conducted a very thorough and lengthy colloquy with Green and his attorneys. (Notes of Testimony (N.T.), Trial at 4-24.) The record clearly indicates that Green expressly

15

agreed to waive his right to a jury trial and to have his case heard by me. *See* **Corbin**, *supra* (defendant who in response to judge's inquiries in connection with waiver of jury, expressly agreed that trial judge could hear his motion to suppress evidence, waived objection to same judge's hearing motion and presiding at trial on merits). Thus, this issue lacks merit.

### D. Negotiation of a Plea Agreement

Green submits counsel's performance was deficient for having failed to negotiate a plea agreement with the Commonwealth. Specifically, Green asserts:

> Both counsel(s) knew the petitioner was innocent of the crime(s) alleged and counsel(s) knew through discovery that existed evidence were available to negate shared intent. With this knowledge they ignored a plea negotiation to have the charges reduced to a more approach charge that constituted the petitioner actions.

(Memorandum of Law in Support of Amended PCRA Petitions at 53 (verbatim).) Green cites no legal authority to support his proposition that effective representation requires an attempt to negotiate a plea agreement. To the contrary, our Superior Court has noted "[t]here is no caselaw which requires grant of a new trial due to counsel's failure to negotiate a guilty plea." **Commonwealth v. Lassen**, 442 Pa. Super. 326, 659 A.2d 999, 1013 (1995).

Furthermore, the record is devoid of any reference to Green being willing to enter a guilty plea to any offense or to the prosecution being willing to offer any plea agreement to Green. Although a defendant is entitled to effective representation in connection with the negotiation of a plea, "there is no constitutional right to plea

16

bargain, since the prosecutor need not do so if he prefers to go to trial."

**Commonwealth v. Stinnett**, 356 Pa. Super. 83, 514 A.2d 154 (1986) (*quoting*

**Weatherford v. Bursey**, 429 U.S. 545, 561 (1977)). Accordingly, Green's claim is

without merit.

### E. Failure to Investigate, Interview, Subpoena and Call Certain Witnesses

Next, Green claims his attorney was ineffective for failing to call certain

witnesses at trial. The standards governing a challenge to trial counsel's assistance for

not calling a witness are well settled by the Supreme Court of Pennsylvania:

> When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the **Strickland**[15] test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. . . . To demonstrate **Strickland** prejudice, a petitioner must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case. . . . Thus, counsel will not be found ineffective for failing to call a witness unless the petitioner can show that the witness's testimony would have been helpful to the defense. . . . A failure to call a witness is not *per se* ineffective assistance of counsel for such decision usually involves matters of trial strategy.

**Commonwealth v. Sneed**, 616 Pa. 1, 22-23, 45 A.3d 1096, 1108-09 (2012) (citations

and internal quotations omitted; footnote added). Without providing specific facts to

demonstrate the proposed witnesses' availability and willingness to testify, and that the

---

[15]In **Strickland v. Washington**, 466 U.S. 668, 687-88 (1984), the United States Supreme Court adopted a two-part test for assessing claims of counsel's ineffectiveness: the defendant must prove that (1) counsel's representation "fell below an objective standard of reasonableness," and (2) the defendant was prejudiced by counsel's errors.

17

testimony would have been helpful to Green's case, Green fails to state a claim for relief.

In his original petition, Green claims trial counsel failed to call the following witnesses at his trial: (1) Rebecca Hall; (2) Natasha Sweigart; (3) Oscar Martinez; and (4) Elliot Olmeda-Torres, Jr. I begin by noting that merely identifying the witnesses by name and stating that Petitioner thinks they would have contributed to his case does not meet the required burden of proof set forth by our Supreme Court. Likewise, claiming that trial counsel could have compelled the appearance of the witnesses through a subpoena, does not prove that the witness was available to testify for the defense or that the witness was willing to testify for the defense. Moreover, even if Green is able to meet his burden that the witnesses were available and willing to testify, he must further prove that the proffered testimony would have changed the outcome of the trial.

Here, PCRA counsel retained a private investigator, Dick Jeffries, to assist in finding these individuals and in attempting to obtain statements from them. Mr. Jeffries was successful in locating Rebecca Hall. (*See* No Merit Letter at 6.) Ms. Hall, however, was unable to state whether Green was present at Mill Street prior to the shooting because she stated she was heavily on drugs at the time and had no clear recollection of the events.[16] She did state that Christopher Lassitter and another man, whose name she could not remember, talked about and planned the murder together. (Id.)

---

[16]In his statement to the police, Green confirmed that Ms. Hall was "drugged up on whatever she was using and just sitting there [in the basement] in her own little world." (N.T., Trial at 449.)

18

In Ms. Hall's statement to the police on April 21, 2011, she puts Green at Mill Street. (*See* Memorandum of Law in Support of Amended PCRA Petitions, Exhibit "H" at 2.) In that statement, Ms. Hall told police that Green was called and told to bring a gun over to the Mill Street address "cause the plan was to kill B-Boy [Diana Spencer's boyfriend] and Dianna [sic]." (Id. at 5.) She then states that Green did not bring the gun. (Id.; *see also* Id. at 14-15.) When asked by the police as to who she felt was responsible for participating in the murder, Ms. Hall identified "ICK" and "Shine." (Id. at 8.) Ms. Hall identified Green in a photo array as the man she knew as "ICK." (Id. at 9.)

Given Ms. Hall's statement to the police that she felt Green was responsible for the murder of Diana Spencer, it would appear that trial counsel had a strategic reason for not calling Ms. Hall at trial. During her interview with Mr. Jeffries, Ms. Hall neither recanted her statement nor said anything that was contrary to her April 21, 2011, statement to police. Thus, Green is unable to establish that Ms. Hall's testimony would have changed the outcome of the trial.

Natasha Sweigart was the next witness whom Green claims his trial attorney failed to investigate and call at trial. Mr. Jeffries was unable to locate this witness. PCRA counsel reviewed Ms. Sweigart's statement to the police and determined that "[n]othing in her statement appears to hurt or help [Green]." (*See* No Merit Letter at 7.) Thus, it would appear that trial counsel's failure to call her as a defense witness at trial did not prejudice Green.

Green further claims that trial counsel was ineffective for failing to call Oscar Martinez, his co-defendant, to testify on his behalf. Mr. Martinez was subpoenaed to testify at trial. Because Martinez was represented by counsel, Green's attorneys were

19

not able to speak to him prior to trial without permission from his attorney. Therefore, they could not know what Martinez's testimony might be at trial, if, in fact, he testified and did not invoke his 5th Amendment privilege against self-incrimination. Under these circumstances, it would appear that trial counsel had a strategic reason for not calling Martinez as a defense witness.

The final proposed defense witness was Elliot Olmeda-Torres, Jr.[17] In his statement to the police, Olmeda-Torres stated that Green said, "I was banging on the door." To which, Martinez added: "I saw the curtain moving and I just shot through the door and let off the whole clip." Lassitter, known to Olmeda-Torres only as "B", then stated: "Good job, you guys make me proud." (See No Merit Letter at 8.) This police statement by Olmeda-Torres suggests that his testimony would not have helped Green's case and may, in fact, have hurt his defense.

Under the circumstances of this case, trial counsel will not be found ineffective for failing to call the four witnesses identified by Green because Green has failed to show that the witnesses were available and willing to testify for the defense, and that the absence of the testimony of the witnesses was so prejudicial as to have denied Green a fair trial. Accordingly, this claim must fail.

## F.    Testimony of Commonwealth Witness Taria Lowden

Green initially asserts that Ms. Lowden changed her testimony during the trial, and that counsel failed to use Ms. Lowden's prior statements against her at trial and the

---

[17]This individual was identified at trial as Elliott Almeda Torrez, and by his street name, "Goblin". (N.T., Trial at 571.)

20

fact that she was originally charged with a crime. A review of the record reveals that Attorney Lyden did extensively cross examine Ms. Lowden on her prior interviews with the police. (N.T., Trial at 200-09.) Additionally, Attorney Lyden cross examined Ms. Lowden about her substance abuse and alcohol use, her prior crimes of dishonesty, and her motive to lie. (Id. at 192-99.) Trial counsel also specifically called a defense witness, Elroy Johnson, to testify to Ms. Lowden's reputation in the community for lying. (Id. at 586.) This evidence establishes that trial counsel did attempt to impeach this Commonwealth witness.

Green further argues that trial counsel was ineffective for having failed to file a motion seeking to "suppress" Ms. Lowden's testimony based on her bias against Green. Green misperceives the purpose of a suppression motion, which is to vindicate a defendant's right to be free from unreasonable searches and seizures. *See* Pa.R.Crim.P. 581(A). *See also* **Commonwealth v. Bracey**, 501 Pa. 356, 365, 461 A.2d 775, 779 (1983). A witness's alleged bias may be the subject of cross examination, but suppression is not an available remedy to prevent an allegedly biased witness from testifying.

Next, Green submits that counsel's performance was deficient for having failed to engage an expert witness to disqualify Ms. Lowden from testifying due to her "mental issues/disabilities." As a general matter, the Pennsylvania Rules of Evidence presume all persons are competent to be a witness. Specifically, Rule 601 provides, in pertinent part:

> (a) General Rule. Every person is competent to be a witness except as otherwise provided by statute or in these Rules.

21

(b) Disqualification for Specific Defects. A person is incompetent to testify if the Court finds that because of a mental condition or immaturity the person:

   (1) is, or was, at any relevant time, incapable of perceiving accurately;
   (2) is unable to express ... herself so as to be understood either directly or through an interpreter;
   (3) has an impaired memory; or
   (4) does not sufficiently understand the duty to tell the truth.

Pa.R.E. 601.

In **Commonwealth v. Boich**, 982 A.2d 102 (Pa. Super. 2009) (*en banc*), the Superior Court reversed the trial court and held the defendant did not show a compelling need existed for an involuntary psychiatric examination of the victim witness' competence to testify. Id. at 104. The **Boich** Court opined that Rule 601

> is expressly intended to preserve existing Pennsylvania law. In general, the testimony of any person, regardless of [her] mental condition, is competent evidence, unless it contributes nothing at all because the victim is wholly untrustworthy. Thus, in Pennsylvania, [a witness is] presumed competent to testify, and it is incumbent upon the party challenging the testimony to establish incompetence. Above all, given the general presumption of competency of all witnesses, a court ought not to order a competency investigation, unless the court has actually observed the witness testify and still has doubts about the witness' competency.
>
> Claims that a witness' memory has been corrupted by insanity, mental retardation, hypnosis, or taint go to the competency of that witness to testify. The capacity to remember and the ability to testify truthfully about the matter remembered are components of testimonial competency. The party alleging a witness is incompetent to testify must prove that contention by clear and convincing evidence.

Id. at 109-10 (internal citations, footnote and quotations omitted). A court, therefore, ought not to order an involuntary psychiatric examination of a witness unless the record unequivocally demonstrates a compelling need for examination. Id. at 110.

22

The basis of Green's contention that Ms. Lowden should have been psychiatrically examined is that (1) this witness told the police during her interview that she is "disabled" and "takes medication" (Memorandum of Law in Support of Amended PCRA Petitions, Ex. "A" (Lowden Supplemental Police Report)), and (2) Ms. Lowden's mother told the police her daughter is bipolar. (Id., Ex. I1 (McClendon Supplemental Police Report).) Green contends a symptom of bipolar disorder is "an impaired memory," which was demonstrated by Ms. Lowden's contradictory statements to the police. (Id. at 57-58; see also Id. at 39-40.) Green is merging the concepts of competency and credibility. Contradictory statements are subject to cross examination and do not unequivocally demonstrate a compelling need for a psychological or psychiatric examination.

Incompetency does not follow from the fact that a witness is insane or mentally ill. **Commonwealth v. Counterman**, 553 Pa. 370, 393, 719 A.2d 284, 295 (1998). Thus, a diagnosis of bipolar disorder alone does not present a compelling need for a court-ordered, involuntary psychiatric examination.

> The privacy implications of a compelled psychiatric examination are significant. . . . The presumption of witness competency is necessary to effectuate the fundamental policies underlying both the constitutional right to privacy and the statutory psychiatrist-patient privilege. Thus, a court-ordered, involuntary psychiatric or psychological examination should never be the starting point for a competency evaluation.

**Boich**, 982 A.2d at 110 (citations and quotation marks omitted). As a result, "a trial court does not have an obligation to order an investigation of a witness's competency unless the court has some doubt on the issue from having observed the witness."

23

**Counterman**, *supra* at 393, 719 A.2d at 295 (*citing* **Commonwealth v. Jennings**, 446, Pa. 294, 304, 285 A.2d 143, 149 (1971), and **Commonwealth v. Smith**, 414 Pa. Super. 208, 606 A.2d 939, 943 (1992)). Here, based on my observation of the witness, I had no doubt as to her competency. Therefore, any request by defense counsel for such an involuntary mental health examination of Ms. Lowden would have been denied.

Finally, Green contends his trial counsel failed to raise prosecutorial misconduct for the Commonwealth's use of purportedly perjured testimony by Ms. Lowden. The record reveals a point in the trial where the Assistant District Attorney attempted to introduce a prior inconsistent statement of Ms. Lowden's for substantive purposes. (N.T., Trial at 172.) Both counsel for Green objected and argued against the admission of that statement at trial for substantive purposes. Accordingly, this issue is wholly without merit, as are the three previous claims regarding Ms. Lowden's testimony.

### G.    Exculpatory Evidence

Green maintains that trial counsel failed to introduce exculpatory evidence at trial which would have "negated" the charges of murder and criminal conspiracy and "suggested a lesser offense." (Memorandum of Law in Support of Amended PCRA Petitions at 49.) The purported exculpatory evidence identified by Green is the police statement of Rebecca Hall. As noted above, in her April 21, 2011 statement to the police, Ms. Hall said that Green was called and told to bring a gun over to the Mill Street house "cause the plan was to kill B-Boy [Diana Spencer's boyfriend] and Dianna [sic]." (Id., Exhibit "H" at 5.) Ms. Hall further named "ICK" (whom she identified in a photo array as Green) and "Shine" as the individuals responsible for the murder. (Id. at 8.)

24

Exculpatory evidence is evidence that extrinsically tends to establish that a defendant is innocent of the crimes charged. **Commonwealth v. Hicks**, 270 Pa. Super. 546, 550, 411 A.2d 1220, 1222 (1979). The police statement of Ms. Hall had no exculpatory value in that it does not exclude Green as one of the participants in Ms. Spencer's murder. Had this statement been used at trial, I suggest it would have strengthened the Commonwealth's case and further established Green's culpability. Thus, this claim of ineffective assistance of counsel lacks merit.

## H. Sentence of Life Without Parole

Green contends counsel was ineffective for failing to raise a claim of abuse of discretion by the court for the sentence of life without parole. The sentence of life without parole is a mandatory sentence for an individual who is convicted of first-degree homicide.[18] 18 Pa.C.S.A. § 1102(a). If counsel had challenged this sentence as an abuse of discretion it would have been rejected by the Superior Court as frivolous as a matter of law. Therefore, this claim is meritless.

---

[18]Green argues that his sentence is only mandatory "for an individual with a prior homicide conviction." (*See* June 16, 2016 Response to Rule 907 Notice at 5.) Otherwise, "[t]he only way to find a first time defendant guilty of first degree murder with a sentence of life without parole [] [i]s if that person is responsible for the death of an unborn child or law enforcement officer." (Id.) This argument must be rejected in light of the clear statutory pronouncement on sentencing of first degree homicide offenders:

**(a) First degree.–**
(1) Except as provided under section 1102.1 (relating to sentence of persons under the age of 18 for murder, murder of an unborn child and murder of a law enforcement officer), a person who has been convicted of a murder of the first degree or of murder of a law enforcement officer of the first degree shall be sentenced to death or to a term of life imprisonment in accordance with 42 Pa.C.S. § 9711 (relating to sentencing procedure for murder of the first degree).

18 Pa.C.S.A. § 1102.

25

In a related claim, Green argues counsel was deficient for not challenging the life without parole sentence under **Miller**, *supra*, and **Graham**, *supra*. In **Miller**, the United States Supreme Court held that the Eighth Amendment prohibits a mandatory sentence of life without parole for those under the age of 18. 567 U.S. at —, 132 S.Ct. at 2469. In **Graham**, the Court ruled that the Eighth Amendment prohibits a sentence of life without possibility of parole for juveniles convicted of non-homicide offenses. 560 U.S. at 62. Here, it is undisputed that Green was 21 years old, or three years beyond the age of majority, at the time the murder occurred. Therefore, these United States Supreme Court cases addressing the constitutional rights of juveniles do not apply, and Green was subject to a sentence of life without parole. This issue, therefore, lacks merit.

## I.     Sufficiency and Weight of the Evidence

Green claims the evidence presented at trial was insufficient to support his convictions for murder and conspiracy to commit murder, and that his trial counsel's failure to make that argument on direct appeal was constitutionally defective. The standard to apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact finder to find every element of the crime beyond a reasonable doubt. **Commonwealth v. Vandivner**, 599 Pa. 617, 627, 962 A.2d 1170, 1176 (2009); **Commonwealth v. McCurdy**, 943 A.2d 299, 301-02 (Pa. Super. 2008). "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the

evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." **Commonwealth v. Taylor**, 831 A.2d 661, 663 (Pa. Super. 2003). Moreover, "[t]he Commonwealth may sustain its burden by proving the crime's elements with evidence which is entirely circumstantial and the trier of fact, who determines credibility of witnesses and the weight to give the evidence produced, is free to believe all, part, or none of the evidence." **Commonwealth v. Riley**, 811 A.2d 610, 614 (Pa. Super. 2002) (*quoting* **Commonwealth v. Brown**, 701 A.2d 252, 254 (Pa. Super. 1997)).

In this case, Green was convicted of first-degree murder and criminal conspiracy to commit murder.

> There are three elements of first-degree murder: (i) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and a specific intent to kill. 18 Pa.C.S. § 2502(a); **Commonwealth v. Houser**, 610 Pa. 264, 18 A.3d 1128, 1133 (2011). As set forth in the third element, first-degree murder is an intentional killing, *i.e.,* a 'willful, deliberate and premeditated killing.' 18 Pa.C.S. § 2502(a) and (d). Premeditation and deliberation exist whenever the assailant possesses the conscious purpose to bring about death. The law does not require a lengthy period of premeditation; indeed, the design to kill can be formulated in a fraction of a second. Specific intent to kill as well as malice can be inferred from the use of a deadly weapon upon a vital part of the victim's body. Whether the accused had formed the specific intent to kill is a question of fact to be determined by the jury.

**Commonwealth v. Jordan**, 619 Pa. 513, 522, 65 A.3d 318, 323 (2013) (citations and internal quotation marks omitted).

To prove conspiracy, "the trier of fact must find that: (1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another . . . to engage in the crime; and (3) the defendant or one or

27

more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime." **Commonwealth v. Montalvo**, 598 Pa. 263, 275-75, 956 A.2d 926, 932 (2008) (*quoting* **Commonwealth v. Murphy**, 577 Pa. 275, 844 A.2d 1228, 1238 (2004)). "Finally, each member of a conspiracy to commit homicide can be convicted of first-degree murder regardless of who inflicted the fatal wound." Id. (*citing* **Commonwealth v. Wayne**, 553 Pa. 614, 623, 720 A.2d 456, 460 (1998)). Application of these concepts to the facts presented at trial requires this Court to reject Green's ineffective assistance claim based upon counsel's failure to challenge the sufficiency of the evidence on appeal as to his convictions for murder and criminal conspiracy.

The evidence, viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to sustain Green's convictions for first-degree murder in the killing of Diana Spencer, and for conspiracy to commit such offense. With respect to first-degree murder, Green does not dispute that Ms. Spencer's death was a homicide, as the evidence plainly established that she died from multiple gun shot wounds. Instead, Green only challenges the second and third elements of first-degree murder, *i.e.*, whether he was responsible for Ms. Spencer's death, and whether he had the specific intent to kill.

As the evidence clearly established that co-defendant Martinez was the actual shooter in this case, Green's liability is as an accomplice. "It is well established that a defendant, who was not a principal actor in committing the crime, may nevertheless be liable for the crime if he was an accomplice of a principal actor." **Commonwealth v. Murphy**, 577 Pa. 275, 285, 844 A.2d 1228, 1234 (2004) (*citing* 18 Pa.C.S.A. § 306, and

28

**Commonwealth v. Bradley**, 481 Pa. 223, 392 A.2d 688, 690 (1978) (the actor and his accomplice share equal responsibility for commission of a criminal act)).  A person is deemed an accomplice of a principal if he acts with the intent of promoting or facilitating the commission of an offense *and* agrees, aids or attempts to aid such other person in either planning or committing that offense.  *See* 18 Pa.C.S.A. § 306; **Commonwealth v. Spotz**, 552 Pa. 499, 512, 716 A.2d 580, 585 (1998).  Accordingly, two prongs must be satisfied for a defendant to be found guilty as an "accomplice."  First, there must be evidence that the defendant intended to aid or promote the underlying offense.  Second, there must be evidence that the defendant actively participated in the crime by soliciting, aiding, or agreeing to aid the principal.  **Murphy**, *supra* at 286, 844 A.2d at 1234.  "Both requirements may be established wholly by circumstantial evidence.  Only the least degree of concert or collusion in the commission of the offense is sufficient to sustain a finding of responsibility as an accomplice.  No agreement is required, only aid."  **Commonwealth v. Kimbrough**, 872 A.2d 1244, 1251 (Pa. Super. 2005).  With regard to the amount of aid, it need not be substantial so long as it was offered to the principal to assist him in committing or attempting to commit the crime.  **Murphy**, *supra*.  "[A] shared criminal intent between the principal and his accomplice may be inferred from a defendant's words or conduct or from the attendant circumstances."  **Spotz**, *supra* at 511, 716 A.2d at 586.

Green asserts that the evidence presented at trial was insufficient because it failed to prove that he shared the requisite state of mind with his co-conspirator who shot and killed Ms. Spencer.  At trial, Green challenged the existence of a conspiracy to

29

commit murder and the Commonwealth's contention that he understood that a killing was planned. The defense theory of the case was that Green, on behalf of his friend Lassitter, also known as "B" (N.T., Trial at 133), went to the residence of Diana Spencer to speak to her and her boyfriend, Francisco Camacho, in order to "broker peace" and to settle a dispute between the respective parties.[19] (N.T., Trial at 611.) Defense counsel argued there was no evidence Green agreed to participate in a murder or a crime of any kind. (Id. at 613.) Rather, Green merely agreed to knock on Ms. Spencer's door in hopes of conversing with her or her boyfriend. But Martinez "decided to do something completely different, completely independent of what Mr. Green was doing, what Mr. Green understood the plan to be." (Id. at 614.) Green claimed not to know that when Ms. Spencer answered the door, Martinez would pull out a firearm and shoot her at point blank range. (Id.)

The Commonwealth presented the following evidence to refute Green's defense. Taria Lowden testified that she was with Green, whom she identified at trial as "ICK" ("Insane Crip Killer") (N.T., Trial at 168-69), and Martinez (whom she knew only as "Shine" (see Id. at 133)), on the night of Ms. Spencer's murder. (Id. at 153.) She stated that Green and Martinez both left the vehicle in which she was a passenger somewhere near Ruby Street. (Id. at 158, 185.) Ms. Lowden testified that both Green and Martinez later returned to the car and had red bandanas around their necks that were not there

---

[19]The residents of 26 Old Dorwart Street were associated with a group known as "the Latin Kings" (N.T., Trial at 127-29, 146, 148), and Green and his co-defendants, who gathered at 322 Mill Street, were affiliated with a group known as "the Bloods." (Id. at 132-34, 145, 178-80.) Lassitter's girlfriend, also a member of "the Bloods", had apparently been assaulted earlier in the day by members of the Latin Kings, while she was holding Lassitter's son in her arms. (See Id. at 132-33, 158, 176, 513-14.)

30

before.[20] (Id. at 159, 185.) She added that Green was "calm" but Martinez was "sweaty and shaky". (Id.) Ms. Lowden observed Martinez handling a gun in the back seat, and later heard Lassitter say "they just shot some bitch on Dorwart." (Id. at 160, 165.)

After the shooting, all those in the car went down into the basement at 322 Mill Street. (N.T., Trial at 166-68.) Ms. Lowden testified that Green said, "I didn't think [Martinez] was going to do it. I knocked on the door." (Id. at 169.) She stated that Green told the group he thought he might have to do "it," implying he would have to shoot the gun through the door, because Green did not think Martinez would be able to do it. (Id. at 174-75.) Ms. Lowden described Lassitter's attitude in the basement as celebratory after the murder. (Id. at 170, 175.)

The Commonwealth proved that Lassitter solicited Martinez and Green to retaliate against Ms. Spencer and Camacho for the attack on the mother of Lassitter's son. The evidence revealed that Green, Martinez and Lassitter cooperated together in driving to Ms. Spencer's home. It was Green whose knock on the door was clearly designed to bring Ms. Spencer and/or Camacho to them. Ms. Lowden's testimony established that Green had knowledge that Martinez was going to fire the gun into the door. Moreover, Green stated that he was prepared to shoot the gun had Martinez not been able to do it.[21] This boasting statement constitutes an admission of complicity in

---

[20]The color red was worn by the Bloods, while the colors black and yellow were associated with the Latin Kings. (N.T., Trial at 128, 132-33, 185-86.)

[21]Green's insistence that he did not know weapons were involved when this confrontation with the Latin Kings was being planned in the basement of the Mill Street house (N.T., Trial at 400-01) is inconsistent with his statement to the police, in which he said that when Lassitter asked about a gun just hours before the shooting, Green told him he did not have one but that he "could probably find a way to get [him] one." (Id. at 287.) Later in the interview, Green admitted that he did own a gun and that others knew about it. (Id. at 356.)

31

the murder.

Viewed in the light most favorable to the Commonwealth, the prosecution presented evidence to support a finding that Green's willing and conscious participation was, at a minimum, with the intent of promoting or facilitating the commission of Ms. Spencer's murder. This clearly satisfied the statutory elements of first-degree murder, and the evidence was sufficient to sustain the conviction.

These facts further established that Green acted with the requisite *mens rea* to establish the first element of conspiracy: that Green intended to aid in the commission of the murder. Further, as stated above, Green and Martinez were heard discussing the shooting, and both were seen together before and after the crime,[22] thereby supporting the existence of a conspiratorial agreement. Finally, as the object of the conspiratorial agreement was ultimately satisfied with the death of Ms. Spencer, it was clearly established that an overt act was committed in furtherance of the crime.

Raising a claim on appeal that the evidence was insufficient to support the convictions for murder and conspiracy to commit murder would have been frivolous and would have offered Green no relief. Accordingly, this ineffectiveness claim is without merit.

Green also contends that even if the evidence was sufficient to support a finding of first-degree murder, the verdict was against the weight of the evidence and counsel was deficient for not challenged it on appeal. Green's position is unpersuasive in that it

---

[22]The video recording seized from a nearby business shows Green and Martinez conversing immediately before the shooting at Ms. Spencer's residence. (*See* N.T., Trial at 262-63; *see also* Commonwealth Ex. 18.) This fact also raises a reasonable inference that these two men were finalizing the details of some joint criminal activity.

32

**IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA**
**C R I M I N A L**

COMMONWEALTH OF PENNSYLVANIA      :
     :
           v.                 :      No. 5217 - 2011
     :
JAKWAN ARCHIE GREEN          :

**O R D E R**

AND NOW, this 10th day of April, 2017, upon consideration of Jakwan Archie Green's original and amended *pro se* petitions for post conviction collateral relief, it is hereby ORDERED that said petitions are DENIED without a hearing.

Further, the May 23, 2016, no-merit letter of Petitioner's court-appointed attorney, Dennis C. Dougherty, Esquire, a copy of which was attached to this Court's Rule 907 Notice filed on May 24, 2016, states that the *pro se* petition is lacking in merit as a matter of law, a conclusion with which I agree after my independent review of the record. Accordingly, Mr. Dougherty is granted leave to withdraw as counsel.

Pursuant to Pa.R.Crim.P. 907(4), this Court advises Petitioner that he has the right to appeal from this Order. Petitioner shall have 30 days from the date of this final Order to appeal to the Superior Court of Pennsylvania. Failure to appeal within 30 days will result in the loss of appellate rights.

It is further ORDERED that Petitioner shall have the right, if indigent, to appeal *in forma pauperis*.

BY THE COURT:

DAVID L. ASHWORTH
JUDGE

LANCASTER COUNTY, PA
2017 APR 10 AM 11: 41
CLERK OF COURTS